# 24-140

## IN THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

**KAMLESH BANGA**

**Plaintiff and Appellant**

**vs.**

**LAWRENCE R. LUSTIG, M.D.**

**Defendant and Appellee**

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF OF APPELLANT KAMLESH BANGA**

**ORAL ARGUMENT REQUESTED**

Kamlesh Banga, Pro Se
P. O, Box 5656
Vallejo, CA 94591
(707) 342-1692

# TABLE OF CONTENTS

I. STATEMENT OF THE CASE……………….....…………...…….……………..1

II. STATEMENT OF JURISDICTION………………………………………….2

III. ISSUES TO BE DECIDED ON THIS APPEAL………………………….3

    A. The District Court erred as a matter of law when it failed to overrule Plaintiff's objections to the report and recommendation on UCL Claims, warranting reversal under 28 U.S.C. §2106……………………………….3

    B. The District Court's inconsistent rulings on subject matter jurisdiction and improper declination of diversity jurisdiction resulted from abdication of its duty under 28 U.S.C. §636(b) and FRCP 72(b)(3), failing to address UCL claim objections, warranting remand under 28 U.S.C. §2106……...…3

    C. The District Court erred as a matter of law in failing to address objections to the UCL claim, resulting in erroneous declination of supplemental jurisdiction, warranting reversal under 28 U.S.C. §2106…………………….3

    D. The District Court erred as a matter of law by abdicating its statutory duty of de novo review, failing to address the magistrate judge's violations of Rules 12(d) and 56(c), thereby shielding potential fraud and improperly converting a motion to dismiss into a de facto summary judgment…...…….3

    E. The District Court erred as a matter of law in applying res judicata to bar Appellant's non-statutory claims, disregarding the voluntary dismissal without prejudice of related statutory claims, misapplying legal principles, and overlooking procedural errors that violated Appellant's due process rights…………………………………………………………………………3

    F. The District Court erred as a matter of law in adopting the magistrate's finding that remedies for violations of Cal. Health & Saf. Code §123110 are limited to injunctive relief, thereby disregarding the California Court of Appeal's broader interpretation and potentially violating the Full Faith and Credit Act, 28 U.S.C. §1738……………………………………….…4

i

G. The District Court erred as a matter of law and abused its discretion in failing to grant leave to amend the complaint, violating FRCP 15(A)(2) and contradicting its own findings of merit and timeliness...................4

IV. STATEMENT OF FACTS.................................................................4

A. Procedural History .........................................................................8
B. Procedural History After *Banga I* .............................................10
C. Proceedings Before This Court.....................................................11

V. SUMMARY OF ARGUMENTS.......................................................13

VI. STANDARD OF REVIEW.............................................................16

VII. ARGUMENT...............................................................................18

A. The District Court Erred as a Matter of Law When It Failed to Overrule Plaintiff's Objections to the Report and Recommendation on UCL Claims, Warranting Reversal Under 28 U.S.C. §2106.............................................18

1. De Novo Review Standard for Magistrate Judge Recommendations.......18
2. District Court's Complete Silence on Valid and Unopposed Objections....18
3. The Magistrate Judge's Failure to Consider Binding *Banga I* Precedent...20
4. Critical Omissions from the RFAC Demonstrating Claim's Timeliness....20
5. Relief Required Under 28 U.S.C. §2106......................................22

B. The District Court's Inconsistent Rulings on Subject Matter Jurisdiction and Improper Declination of Diversity Jurisdiction Resulted From Abdication of its Duty Under 28 U.S.C. §636(b) and FRCP 72(b)(3), Failing to Address UCL Claim Objections, Warranting Remand Under 28 U.S.C. §2106........ 23

1. Permanence of Established Subject Matter Jurisdiction........................23
2. The Time-of-Filing Rule Mandates Retention of Diversity Jurisdiction. ..24
3. Contradictory Rulings on Jurisdiction.................................................25

C. The District Court Erred as a Matter of Law in Failing to Address Objections to the UCL Claim, Resulting in Erroneous Declination of Supplemental Jurisdiction, Warranting Reversal Under 28 U.S.C. §2106................................26

1. District Court's Critical Oversight and Procedural Background................27
2. Consequences of the Oversight.......................................................27
3. Legal Principles Governing Supplemental Jurisdiction............................28
4. Analysis of the District Court's Error.............................................28
   a) Mischaracterization of Jurisdiction as Discretionary...............28
   b) Erroneous Reasoning Regarding Familiarity with State Law......29
   c) Failure to Consider Certification to California Supreme Court....29
5. Justification for Remand Under 28 U.S.C. § 2106...........................30

D. The District Court Erred as a Matter of Law By Abdicating Its Statutory Duty of De Novo Review, Failing to Address the Magistrate Judge's Violations of Rules 12(d) and 56(c), Thereby Shielding Potential Fraud and Improperly Converting a Motion to Dismiss Into a De Facto Summary Judgment................................................................................30

**1. Magistrate Judge's Procedural Errors**.....................................31
   a) Improper conversion of motion to dismiss without adhering to rule 12(d).................................................................31
   b) Arbitrary Denial of Plaintiff's Unopposed Motion for Limited Discovery....................................................................32
**II. The District Court's Compounding Errors**..................................34
   a) Improper Burden Shifting.................................................34
   b) Denial of Opportunity to Develop the Record.........................35
   c) Improper Weighing of Evidence.........................................35
1 Failure to Order Production of Medical Records..............................35
2. Relevance and Importance of Medical Records...............................35
3. Potential for Fraud/Misrepresentation and Ongoing Breach of Fiduciary Obligations...................................................................36
4. Abuse of Discretion in Discovery: Grounds for Reversal and Remand Under 28 U.S.C. §2106...................................................37

E. The District Court Erred as a Matter of Law in Applying Res Judicata to Bar Appellant's Non-Statutory Claims, Disregarding the Voluntary Dismissal Without Prejudice of Related Statutory Claims, Misapplying Legal Principles, and Overlooking Procedural Errors that Violated Appellant's Due Process Rights................................................................39

1. The Voluntary Dismissal Without Prejudice of Appellant's Statutory Claims Precludes the Application of Res Judicata to the Derivative Non-Statutory Claims
   a) Lack of Adjudication on Primary Statutory Claims.........................40
   b) Preclusion of Res Judicata for Derivative Non-Statutory Claims.........41
2. Res Judicata is inapplicable due to new evidence and misrepresentation...41
   a) Pattern of Defendant's Contradictory Statements..........................42
3. Legal Framework for New Evidence Exception.................................42
4. Misapplication of the "Primary Rights" Theory.........................................36
5. Impact on Judicial Economy ………………………………………..…..44
6. Violation of FRCP 12(d).............................................................44
7 Discovery Obstruction..............................................................44

F. The District Court Erred as a Matter of Law in Adopting the Magistrate's Finding that Remedies for Violations of Cal. Health & Saf. Code §123110 are Limited to Injunctive Relief, Thereby Disregarding   the California Court of Appeal's Broader  Interpretation and Potentially Violating the Full  Faith and Credit Act, 28 U.S.C. §1738................... ..46

   1 The District Court's Interpretation of Cal. Health & Saf. Code §123110 remedies is legally erroneous.....................................47
   2 Expansion of Potential Remedies……………………………...48
   3 The Violation of Full Faith and Credit Principles Necessitates Reversal.....................................................................49
   4 The Unpublished Status of *Banga I and II* is Irrelevant ……...........49
   5 Procedural Error and Abdication of Judicial Duty Mandate Reversal Under §2106 …………………….…………………….………… 50
   6 The Error's Impact Requires More Than Mere Correction..............51
   7 Section 2106 Provides the Necessary Remedial Authority..............51
   8 Reversal Serves Essential Judicial Interests…………………….....51

G. The District Court Erred as a Matter of Law and Abused its Discretion in Failing to Grant Leave to Amend the Complaint, Violating FRCP 15(A)(2) and  Contradicting its Own Findings of Merit and Timeliness................. .52

   1. The District Court Contradicted Its Own Findings.......................... .52
   2. The District Court Violated the Liberal Amendment Standard........ ..53
   3. Policy Considerations Supporting Amendment.................................53
   4. The Court's Findings Negate Bad Faith Concerns.............................55
   5. Newly Discovered Information Justifies Amendment........................56

6.  Absence of Opportunity to Address Court's Concerns............................57

1.  Specific Improvements in the Proposed Amendment..............................57

    a)  Clarification of § 123110 Claim Timeline……………….………......57
    b)  Enhanced Pleading Structure……………………………………………57
    c)  Jurisdictional and Procedural Clarity…………………………………57
    d)  Strengthened Legal Framework……………….……………....…57
    e)  Additional Supporting Elements…………………………………....58

VIII.  Oral Argument Requested………………………………………………58

IX.  CONCLUSION……………………………………………………………..59

# TABLE OF AUTHORITIES

CASES

*Acito v. IMCERA Grp., Inc.,*
     47 F.3d 47, 55 (2d Cir. 1995)..............................................................56

*Allaire Corp. v. Okumus*,
     433 F.3d 248, 249 (2d Cir. 2006)..........................................................17

*Anderson v. Liberty Lobby, Inc*.,
     477 U.S. 242, 247 (1986)..........................................................17, 33, 35

*Banga v. Regents of the Univ. of Cal*.
     (Oct. 1, 2019, A151758) [nonpub. opn.] (Banga I).........................*in passim*

*Banga v. Regents of the Univ. of Cal.*
     (November 18, 2022, A162936) [nonpub. opn.] (Banga II).......... *in passim*

*Bayway Refining Co. v. Oxygenated Mktg. & Trading A.G.,*
     215 F.3d 219, 226-27 (2d Cir. 2000).................................................32, 42

*Berger v. United States*,
     87 F.3d 60, 65 (2d Cir. 1996)..............................................................33

*Block v. First Blood Assocs*.,
     988 F.2d 344, 350 (2d Cir. 1993)........................................................53

*Boeken v. Philip Morris USA, Inc.,*
     48 Cal. 4th 788, 797 (2010)................................................................43

*Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.,*
     373 F.3d 296, 301 (2d Cir. 2004).........................................................25

*Carnegie-Mellon Univ. v. Cohill,*
     484 U.S. 343, 350 (1988)...................................................................28

*Carlsbad Tech., Inc. v. HIF Bio, Inc.,*
     556 U.S. 635, 639 (2009)...................................................................26

*Catlin v. United States,*
    324 U.S. 229, 233 (1945)................................................................4

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)...................................................................34

*Cisneros v. U.D. Registry, Inc.,*
    39 Cal.App.4th 548, 563-564 (1995).......................................20

*Colorado River Water Conservation Dist. v. United States*,
    424 U.S. 800, 817 (1976)....................................................15, 29

*Cortez v. Purolator Air Filtration Products Co.,*
    23 Cal.4th 163, 178-179 (2000)...............................................20

*Doe v. Colgate University,*
    5 F.4th 194, 203 (2d Cir. 2021)..........................................19, 20

*Eminence Capital, LLC v. Aspeon, Inc.,*
    316 F.3d 1048, 1052 (9th Cir. 2003)........................................54

*Ex parte McCardle,*
    74 U.S. 506, 514 (1868)....................................................23, 26

*Fidelity Union Trust Co. v. Field,*
    311 U.S. 169 (1940)...................................................................50

*Foman v. Davis,*
    *371 U.S. 178, 182* (1962) ................................................53, 56

*Fowlkes v. Adamec,*
    432 F.3d 90, 95 (2d Cir. 2005).................................................17

*Freeport-McMoRan, Inc. v. K N Energy, Inc.,*
    498 U.S. 426, 428 (1991).........................................................24

*Friedl v. City of New York*,
    210 F.3d 79, 83 (2d Cir. 2000).................................................17

*Giannone v. York Tape & Label, Inc.*,
    548 F.3d 191 (2d Cir. 2008)........................................................................49

*Grassia v. Scully*,
    892 F.2d 16, 19 (2d Cir. 1989)...............................................1, 18, 19, 23

*Grupo Dataflux v. Atlas Global Group, L.P.*,
    541 U.S. 567, 570-71 (2004).................................................................24

*Hellstrom v. U.S. Dep't of Veterans Affairs*,
    201 F.3d 94, 97 (2d Cir. 2000)........................................................17, 33

*Hernandez v. Coffey*,
    582 F.3d 303, 307 (2d Cir. 2009)...........................................................38

*Hickman v. Taylor*,
    329 U.S. 495, 507 (1947)......................................................................37

*Hishon v. King & Spalding*,
    467 U.S. 69, 73 (1984).........................................................................17

*Hynes v. Squillace*,
    143 F.3d 653, 656 (2d Cir. 1998)......................................................18, 19

*Jackson v. Burke*,
    256 F.3d 93, 95 (2d Cir. 2001)..............................................................33

*Kenner v. Commissioner of Internal Revenue*,
    387 F.2d 689 (7th Cir. 1968)..................................................................42

*Klein v. Earth Elements, Inc.*,
    59 Cal.App.4th 965, 968 (1997)..............................................................20

*Lanham v. County of Los Angeles*,
    No. B252156, 2014 WL 1682896 (Cal. App. 2d Dist. Apr. 29, 2014).......47

*Lehman Brothers v. Schein*,
    416 U.S. 386, 391 (1974)......................................................................29

viii

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160, 190 (2d Cir. 2015)............................................................53, 58

*Maher v. County of Alameda*,
  223 Cal.App.4th 1340, 1354 (2014)......................................................47, 48

*Maharaj v. Bankamerica Corp.*,
  128 F.3d 94, 97 (2d Cir. 1997)....................................................................40

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574, 587 (1986).............................................................................17

*McLeod v. Jewish Guild for the Blind*,
  864 F.3d 154, 157 (2d Cir. 2017)................................................................45

*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism*,
  6 Cal.5th 1207, 1218 (2018)........................................................................40

*Pangburn v. Culbertson*,
  200 F.3d 65, 70 (2d Cir. 1999).....................................................................52

*Pegram v. Herdrich*,
  530 U.S. 211, 224 (2000).............................................................................37

*Pozdniakov v. Justice Court*,
  369 F. App'x 225, 226 (2d Cir. 2010)..........................................................39

*Pricer v. Deutsche Bank*,
  842 F.3d 583, 588 (7th Cir. 2016)...............................................................26

*San Remo Hotel, L.P. v. City and County of San Francisco*,
  545 U.S. 323 (2005).....................................................................................49

*Scherer v. Equitable Life Assurance Soc'y of U.S.*,
  347 F.3d 394, 397 (2d Cir. 2003).................................................................24

*Schwartz v. Compagnie General Transatlantique*,
  405 F.2d 270, 275 (2d Cir. 1968).................................................................38

*Slater v. Blackwood,*
    15 Cal. 3d 791, 795 (1975)........................................................43

*St. Paul Mercury Indemnity Co. v. Red Cab Co.,*
    303 U.S. 283, 289-90 (1938)...................................................24

*State Teachers Retirement Board v. Fluor Corp.,*
    654 F.2d 843, 856 (2d Cir. 1981)............................................55

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83, 94-95 (1998)..................................................23, 25

*Storey v. Cello Holdings, LLC,*
    347 F.3d 370, 383 (2d Cir. 2003)............................................39

*Summers v. Earth Island Institute*,
    555 U.S. 488, 493 (2009)........................................................45

*Thomas v. Arn,*
    474 U.S. 140, 154 (1985).......................................................19

*Todd v. Exxon Corp.,*
    275 F.3d 191, 198 (2d Cir. 2001)............................................17

*United Mine Workers of America v. Gibbs,*
    383 U.S. 715, 726 (1966)...........................................15, 28, 30

*United States v. Hernandez-Rodriguez,*
    352 F.3d 724, 730 (2d Cir. 2003)............................................22

*United States v. Raddatz,*
    447 U.S. 667, 676 (1980)....................................................31, 34

*United States v. Salameh*,
    84 F.3d 47, 54 (2d Cir. 1996).................................................19

*Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*,
    946 F.3d 120, 134 (2d Cir. 2019).............................................24

*West v. American Telephone & Telegraph Co.*,
  311 U.S. 223 (1940)......................................................................50

*Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*,
  166 F.3d 59, 62 (2d Cir. 1999).....................................................24

*Zervos v. Verizon N.Y., Inc.*,
  252 F.3d 163, 169 (2d Cir. 2001)..................................................37

STATUTES AND RULES

28 U.S.C. § 636(b)
28 U.S.C. § 636(b)(1)
28 U.S.C. § 1291
28 U.S.C. § 1332(a)(1)
28 U.S.C. § 1367
28 U.S.C. § 1738
28 U.S.C. § 2106
Cal. Bus. & Prof. Code § 17200
Cal. Health & Saf. Code § 123110
Cal. Civ. Proc. § 338(a)

RULES

Federal Rule of Civil Procedure 1
Federal Rule of Civil Procedure 12(b)(6)
Federal Rule of Civil Procedure 12(d)
Federal Rule of Civil Procedure 15(a)(2)
Federal Rule of Civil Procedure 56
Federal Rule of Civil Procedure 72(b)(3)
Federal Rule of Appellate Procedure 4(a)(1)(A)
Federal Rule of Appellate Procedure 4(a)(4)

# 1. STATEMENT OF THE CASE

This appeal challenges a District Court's judgment that is fundamentally flawed and legally untenable due to a critical judicial error: the court's failure to review timely objections to the Unfair Competition Law (UCL) claim. This procedural misstep violates the court's statutory duty under 28 U.S.C. §636(b) and Federal Rule of Civil Procedure 72(b)(3), contaminating every aspect of the ruling from jurisdictional determination to the application of res judicata, including an improper declination of supplemental jurisdiction over state law claims.

Moreover, the District Court's affirmation of the Magistrate's Judge's Report and Recommendation ("R&R") without conducting the required de novo review constitutes reversible error, particularly given the conversion of the motion to dismiss into a summary judgment motion. This abdication of duty violates 28 U.S.C. §636(b)(1) and FRCP 72(b)(3).

De novo review requires the court to consider the matter anew, without deference to the Magistrate's findings; however, the District Court's cursory treatment of Plaintiff's objections clearly fails to meet this standard. These errors deemed "plain error" by this Circuit (*Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989)), undermine the very foundation of the judicial process, which relies on thorough review and consideration of all relevant claims and objections.

The gravity of these errors warrants reversal to ensure proper judicial review, uphold legal integrity, and provide the Plaintiff with the full consideration she is

entitled to under law. Given the fundamental nature of this judicial error and its far-reaching implications for the case's outcome, this Court should exercise its authority under 28 U.S.C. §2106 to reverse this flawed judgment and remand with explicit instructions for a thorough, de novo review of all objections, particularly those concerning the UCL claim. This action is necessary to rectify the District Court's failure to fulfill its duty and to safeguard due process principles in the judicial system.

## II.  STATEMENT OF JURISDICTION

This Court has appellate jurisdiction over this matter pursuant to 28 U.S.C. §1291, which confers jurisdiction on the courts of appeals for "appeals from all final decisions of the district courts of the United States."

The United States District Court for the Southern District of New York exercised original jurisdiction over this action based on diversity of citizenship under 28 U.S.C. §1332(a)(1). Complete diversity exists between the parties: Appellant Banga is a citizen of California, while Appellee Lustig is a citizen of New York. The amount in controversy exceeds $75,000, exclusive of interest and costs, thereby satisfying the statutory threshold for diversity jurisdiction.

This appeal arises from a final judgment entered by the district court on December 20, 2023, which disposed of all parties' claims. [A-27] The judgment is thus appealable under 28 U.S.C. §1291 as a "final decision" that leaves nothing for the court to do but execute the judgment. *Catlin v. United States*, 324 U.S. 229, 233 (1945).

Appellant filed a timely notice of appeal on January 11, 2024, in compliance with Federal Rule of Appellate Procedure 4(a)(1)(A), which requires that a notice of appeal in a civil case be filed within 30 days after entry of the judgment or order appealed from. The notice of appeal was filed 22 days after the entry of the final judgment, well within the prescribed 30-day period. [A-29-30] No post-judgment motions were filed that would have extended the time to appeal under Rule 4(a)(4). Therefore, this Court has jurisdiction to review the District Court's judgment in its entirety.

## III. ISSUES TO BE DECIDED ON THIS APPEAL

A. The District Court erred as a matter of law when it failed to overrule Plaintiff's objections to the Magistrate Judge's R&R on UCL Claims, warranting reversal under 28 U.S.C. §2106.

B. The District Court's inconsistent rulings on subject matter jurisdiction and improper declination of diversity jurisdiction resulted from abdication of its duty under 28 U.S.C. §636(b) and FRCP 72(b)(3), failing to address UCL claim objections, warranting remand under 28 U.S.C. §2106.

C. The District Court erred as a matter of law in failing to address objections to the UCL claim, resulting in erroneous declination of supplemental jurisdiction, warranting reversal under 28 U.S.C. §2106.

D. The District Court erred as a matter of law by abdicating its statutory duty of de novo review, failing to address the magistrate judge's violations of Rules 12(d) and 56(c), thereby shielding potential fraud and improperly converting a motion to dismiss into a de facto summary judgment.

E. The District Court erred as a matter of law in applying res judicata to bar Appellant's non-statutory claims, disregarding the voluntary dismissal without prejudice of related statutory claims, misapplying legal principles, and overlooking procedural errors that violated Appellant's due process rights.

F. The District Court erred as a matter of law in adopting the magistrate's finding that remedies for violations of Cal. Health & Saf. Code §123110 are limited to injunctive relief, thereby disregarding the California Court of Appeal's broader interpretation and potentially violating the Full Faith and Credit Act, 28 U.S.C. §1738.

G. The District Court erred as a matter of law and abused its discretion in failing to grant leave to amend the complaint, violating FRCP 15(A)(2) and contradicting its own findings of merit and timeliness.

## IV. STATEMENT OF FACTS

In 2008, Plaintiff Banga suffered severe injuries in a motor vehicle accident caused by Chase Sanders, necessitating a lawsuit in Solano County. Jim Larsen from the Law Offices of Gillin, Jacobson, Ellis, & Larsen represented Banga, while Andrew Warner, Esq. represented Sanders.

On June 23, 2009, after conservative treatment proved insufficient, Banga began seeking treatment from Dr. Lawrence Lustig at the UCSF Medical Center for her profound one-sided hearing loss. [A-247-248] In 2010, Dr. Lustig performed a left-sided BAHA surgery on Banga, underscoring the severity of her condition.

As part of the settlement process, opposing counsel required Banga to undergo "medical legal evaluation[s]" to determine the medical causation of her profound one-sided hearing loss. These evaluations were performed by Anga Lao, Au.D., and J. Andrew Dundas, Ph.D., all employees of the Regents of the University of California ("UCSF").

On April 6, 2012, Banga underwent her first Auditory Brainstem Response[1] ("ABR") including Stenger tests. The resulting report included subjective information indicating profound one-sided hearing loss and a negative Stenger test result. Banga's attorney paid defendants $2,632.20 for these April 2012 tests. [A-297] However, the report did not include the objective findings from the ABR testing, which were necessary to establish the medical causation of Banga's profound hearing loss. Consequently, on April 13, 2012, Mr. Warner requested that Banga undergo a repeat ABR test and additional audiological evaluations.

On April 26, 2012, Mr. Larsen arranged a telephonic conference with Dr. Lustig and other relevant parties. The participants agreed that a repeat ABR test should be conducted under Dr. Lustig's supervision to obtain the necessary objective audiological results. Subsequently, Mr. Larsen sent a $600 check to Dr. Lustig for test supervision. [A-250] On May 1, 2012, Mr. Larsen filed a request with the Court to reschedule the trial date in the underlying case, allowing time for the additional ABR test to be performed. [A-252]

On November 5, 2012, Anga Lao conducted an ABR test on Banga as previously agreed. Mr. Larson paid the defendants $2,021.40 for this test. [A-295] The following day, the defendants issued a five-page report documenting the ABR

---

[1] Auditory Brainstem Response is an objective neurophysiological test that evaluates the auditory pathway from nerve to brainstem, aiding in the diagnosis of auditory disorders and related neurological conditions.

test results without the "objective findings". [A-254-258] The absence of "objective findings" prevented the settlement of Banga's case at that time.

Because the "objective findings" of the ABR testing were necessary to determine the medical causation of Banga's one-sided hearing loss and establish the defendant's liability, Mr. Larson scheduled a third ABR test and paid $2,177. [A-296] On October 7, 2013, Banga underwent third ABR test, supervised by Dr. Lustig. On October 10, 2013, the defendant provided a subjective report consisting of seven pages from this test but again failed to release the "objective findings".

On October 29, 2013, Banga had a follow-up appointment with Dr. Lustig. During this visit, Banga informed Dr. Lustig that Mr. Larson had been unable to settle the case on October 21, 2013, due to the lack of objective findings from the ABR testing. Dr. Lustig responded that he had reviewed all of Banga's audiological tests conducted by Dr. Lao up to October 13, 2013, and had not found any report containing "objective findings". He mentioned that a 7-page report from the October 7, 2013, ABR test had already been sent via email to Banga's attorney. The appointment concluded with Dr. Lustig recommending that Banga undergo additional ABR testing at Stanford Hospital. [A-230:21-27]

On April 8, 2014, Banga attended another follow-up appointment with Dr. Lustig. Banga informed Dr. Lustig that the trial for the underlying case was scheduled for December 5, 2014, and expressed concern that without the "objective

findings" from the ABR testing, the causation linking her profound single-sided hearing loss to the January 9, 2008, motor vehicle accident could not be established. Dr. Lustig advised Banga to undergo a new ABR evaluation at Stanford Hospital, reiterating that no reports with "objective findings" were generated during the ABR tests performed on November 5, 2012, and October 7, 2013. Dr. Lustig instructed Banga not to bring her previous ABR reports to Stanford Hospital to avoid potentially affecting the credibility of the new test results. At the conclusion of the appointment, Dr. Lustig's office staff provided Banga with a copy of the April 8, 2014, progress note. [A-231:1-11; A-260]

Following Dr. Lustig's recommendations, Banga underwent a fourth ABR test at Stanford Hospital on June 13, 2014. In August 2014, Banga received the ABR testing report from Stanford Hospital, which included detailed computerized data - the "objective findings." This report showed Banga had single-sided profound hearing loss.

On September 23, 2014, Banga submitted an in-person request at the UCSF Medical Center to obtain the "objective findings" from ABR tests performed on April 6, 2012, November 5, 2012, and October 7, 2013. [A-231-:12-19] These records were needed for review by an independent medical examiner to compare the validity of tests performed at UCSF and Stanford prior to the December 5, 2014 trial in the underlying case. The defendants did not produce these medical records. As a result, Banga was significantly prejudiced, as she could not obtain an independent review without the "objective findings" from these ABR tests.

- 7 -

On December 2, 2014, Banga settled her underlying case on less favorable terms. This settlement was based on Dr. Lustig's two key statements: (1) his review of all audiological tests at UCSF Medical Center revealed no reports containing "objective findings," and (2) each audiologist utilized their own preferred methodology for performing ABR tests. [A-231:20-23]

On April 6, 2015, during an appointment with Dr. Birch at Stanford, Banga inquired about the discrepancy between her ABR testing performed at UCSF Medical Center and Stanford Hospital. Banga pointed out to Dr. Birch that while the Stanford report included detailed computerized data, the UCSF reports contained none. Banga reiterated Dr. Lustig's April 8, 2014 explanation that UCSF audiologists used different technologies, thus not generating computerized objective findings. Dr. Birch contradicted this, stating that ABR testing can only be performed using a specialized computer, and only then the audiologist determines the cause of hearing problems by interpreting the computer printout. [A-231:24-232:5] After April 6, 2015, and until she filed the lawsuit, Banga made numerous requests to receive the objective findings from her three ABR tests, but these requests were unsuccessful. [A-301, ¶4]

## A. PROCEDURAL HISTORY

On January 7, 2016, Plaintiff filed her original complaint against the Defendants for failing to provide a complete copy of her three med-legal evaluations. On October 7, 2016, Plaintiff filed the First Amended Complaint ("FAC") stating six

causes of action. On February 17, 2017, the trial court sustained the Defendants' demurrer to Plaintiff's FAC without leave to amend. On June 7, 2017, Plaintiff appealed the judgment to enforce her right to access her own medical records and violation of Bus. & Prof. Code §17200, et seq.

In March 2019, while the Appeal was pending, Plaintiff contacted the California Department of Public Health (CDPH) about the defendant's denial of her complete medical records. On April 29, 2019, Plaintiff requested her medical records from UCSF Medical Center dated April 2012 to May 2014; however, Defendant did not release the "objective findings" of the ABR testing as requested. [A-262] On July 8, 2023, Plaintiff contacted the CDPH again to report that UCSF had not released the requested medical records. [A-266] In the ensuing days, despite conducting several unannounced on-site investigations at UCSF, the CDPH was unable to locate the objective findings from the April 6, 2012 and October 7, 2013 ABR tests, though they did locate the November 5, 2012 ABR test results. [A-57:1-8]

**Upon reviewing the medical records released on July 24, 2019, Plaintiff discovered that Dr. Lustig had possessed the "objective findings" of her November 5, 2012 ABR test since November 19, 2012. Furthermore, Plaintiff learned that on April 8, 2014, Dr. Lustig had prepared two separate reports. The first was a one-page progress note, which his office staff provided to Plaintiff after her visit. [A-260] The second report he prepared solely contained the November 5, 2012 ABR**

test, but he labeled it as "Orders related to Office Visit on 4/8/2014 with Lawrence R Lustig, MD (continued)." He modified each of the 24 pages of the original ABR report with this misleading header, apparently to create the appearance that the "objective findings" from November 5, 2012 were part of the April 8, 2014 visit. [A-57:9-16, 268-292]

On October 1, 2019, the Court of Appeal of California reversed the judgment, stating in relevant part: "A person should not have to file a lawsuit to obtain copies of their own medical records. However, when faced with a health care provider's obdurate refusal to release them, as Banga alleges here, section 123120 provides a remedy." [A-57:17-58:15] (*Banga v. Regents of the Univ. of Cal.* (Oct. 1, 2019, A151758) [nonpub. opn.] (*Banga I*)) [A-300-306]

## B. PROCEDURAL HISTORY AFTER *BANGA I*

On March 12, 2020, Plaintiff requested Dr. Lustig release the "objective findings" of ABR tests from April 6, 2012 and October 7, 2013. [A-308] On March 16, 2020, Plaintiff filed the Second Amended Complaint, adding Dr. Lustig as a defendant. It asserted six causes of action: violations of California Health & Safety Code §§123110 et seq. and Business & Professions Code §17200 et seq., Breach of Contract, Fraudulent and Intentional Concealment of Medical Records, and Emotional Distress. Defendants demurred to the four non-statutory causes, which the court sustained with leave to amend.

Plaintiff filed the Third Amended Complaint on August 8, 2020. Defendants again challenged the same four non-statutory causes of action. On October 7, 2020, the court sustained this demurrer without leave to amend for these claims. On October 15, 2020, Dr. Lustig filed his verified answer to the two remaining statutory causes of action, not denying the alleged violations but asserting they were unintentional. [A-325:16-23, A-330]

On December 28, 2020, Plaintiff filed a Notice of Appeal (A161967), which the court dismissed on March 18, 2021. [A-334] To perfect the appeal, on March 29, 2021, Plaintiff requested dismissal without prejudice of the two remaining statutory claims (violation of section 123100 and UCL). [A-336] The trial court entered this dismissal on May 7, 2021. [A-340] Plaintiff then filed a Notice of Appeal (A162936) on May 12, 2021. The Court of Appeal affirmed the trial court's judgment in favor of Defendants on November 18, 2022. (*Banga v. Regents of the Univ. of Cal.* (November 18, 2022, A162936) [nonpub. opn.] (*Banga II*)) [A-345-354]

## C. **PROCEEDINGS BEFORE THIS COURT**

On November 17, 2022, Plaintiff filed this action asserting seven causes of action: violations of California Health & Safety Code §§123110 et seq. and Business & Professions Code §17200 et seq., Breach of fiduciary duty, Constructive fraud, Unjust enrichment, Common Count, and Emotional Distress. Defendant filed a

Motion to Dismiss on January 25, 2023. On April 4, 2023, Plaintiff filed a Revised First Amended Complaint ("RFAC"). [A-48-78]

On May 18, 2023, Defendants filed a motion seeking dismissal or judgment on the pleadings under Federal Rules 12(b) or 12(c), submitting additional materials and requesting a decision without trial. Defendants stated that the Court may treat this as a summary judgment motion under Rule 56. [A-80:17-28; A-84-85] On August 28, 2023, Plaintiff filed her Memorandum of Law and Declaration in Opposition to Defendants' motion. [A-164-211, A-226-360] On September 8, 2023, Defendants filed their Reply and Declaration, introducing critical new information, stating:

> **"Plaintiff's medical records have been produced to her on numerous occasions... In light of the fact that these are confidential records, a copy will not be provided herewith, however, with the Court's permission and/or plaintiff's agreement, they can be produced." [A-221:15-20]**

Recognizing the critical nature of this information, Plaintiff promptly filed a motion on September 11, 2023, seeking permission to file a surreply or requesting in camera review of medical records. [A-360-368] However, the Magistrate Judge summarily denied this motion on September 14, 2023, stating: "The Motion to Dismiss is fully briefed and no further filings related to Defendant's Motion to Dismiss are requested unless further ordered by the Court." [A-47]

On October 20, 2023, Plaintiff filed a Motion for Leave to Depose Dr. Lustig [A-369-371] which the magistrate judge promptly denied with a mere 14-word ECF text entry (A-46) On October 30, 2023, the magistrate judge issued a R&R finding Plaintiff's lawsuit time-barred and filed in bad faith, recommending granting Defendant's motion to dismiss with prejudice. [A-32-45] In response, Plaintiff filed timely, specific objections on November 12, 2023 [A-373-394] and amended objections on November 20, 2023 [A-395-424]. These comprehensive, legally substantiated objections required the District Court's de novo review. Defendant filed no opposition, effectively conceding their validity.

While the court reviewed the §123110 objection de novo, finding Plaintiff's claim under §123100 meritorious and timely; however, it failed to conduct de novo review for other timely objections before ruling on December 20, 2023. This selective review, given unopposed objections, potentially impacted the court's analysis and raised judicial process concerns [A-15-26]. The court dismissed all other claims with prejudice and declined supplemental jurisdiction over the surviving claim, dismissing it without prejudice. [A-27]

## V. SUMMARY OF ARGUMENTS

This appeal challenges the district court's judgment as fundamentally defective, untenable, and incapable of standing, primarily due to the court's critical failure to fulfill its statutory duty to review objections to the Magistrate Judge's R&R

- 13 -

on the UCL claim. Under 28 U.S.C. § 2106, which grants appellate courts broad authority to modify, vacate, or reverse any judgment, this error constitutes an egregious abdication of judicial responsibility that necessitates reversal. The specific grounds for reversal are as follows:

### A. Failure to Address Objections to UCL Claims

The District Court erred by failing to address, analyze, or overrule the plaintiff's timely and specific objections to the Magistrate Judge's R&R on the UCL claim. This omission violates the court's duty to conduct an independent review under 28 U.S.C. §636(b) and Federal Rule of Civil Procedure 72(b)(3). The Court 's silence on these objections renders the judgment untenable and necessitates reversal under 28 U.S.C. §2106.

### B. Inconsistent Rulings on Subject Matter Jurisdiction

The District Court made contradictory rulings on subject matter jurisdiction, violating established principles of federal jurisdiction. The Court first made merit-based determinations on state law claims, then improperly declined jurisdiction over remaining claims. This contradicts the time-of-filing rule for diversity jurisdiction and the requirement that jurisdiction be established before ruling on a case's merits. These errors warrant reversal and remand under 28 U.S.C. §2106.

## C. Erroneous Declination of Supplemental Jurisdiction

The District Court's failure to address objections to the UCL claim led to an erroneous declination of supplemental jurisdiction. This oversight contradicts the principles established in *United Mine Workers of America v. Gibbs* and *Colorado River Water Conservation Dist. v. United States*. The court's reasoning regarding unfamiliarity with state law is insufficient to justify declining jurisdiction, and the Court failed to consider certification to the California Supreme Court as an alternative.

## D. Procedural Errors and Failure to Conduct De Novo Review

The District Court failed to fulfill its statutory duty of fresh review, allowing key procedural errors by the magistrate judge. These errors include:

- Improper conversion of a motion to dismiss without adhering to Rule 12(d)
- Arbitrary denial of plaintiff's unopposed motion for limited discovery
- Failure to order production of medical records despite plaintiff's authorization

These errors potentially shielded fraud and improperly converted a motion to dismiss into a de facto summary judgment.

## E. Misapplication of Res Judicata

The District Court erred in applying res judicata to bar the appellant's non-statutory claims. This error stems from:

- Disregarding the voluntary dismissal without prejudice of statutory claims
- Failing to meet the "identical claims" requirement for res judicata
- Misapplying the "primary rights" theory
- Contradicting established precedent and undermining fairness in civil litigation

### F. Misinterpretation of Cal. Health & Saf. Code §123110 Remedies

The District Court erred in adopting the magistrate's finding that remedies for violations of Cal. Health & Saf. Code §123110 are limited to injunctive relief. This interpretation disregards the California Court of Appeal's broader interpretation of available remedies in Banga v. Regents of the Univ. of Cal. (Banga I) and potentially violates the Full Faith and Credit Act, 28 U.S.C. §1738.

### G. Failure to Grant Leave to Amend

The District Court erred in failing to grant leave to amend the complaint, violating Federal Rule of Civil Procedure 15(a)(2) and contradicting its own findings of merit and timeliness. This decision disregards the liberal amendment standard established by the Supreme Court and potentially deprives the plaintiff of the opportunity to properly plead valid claims.

Given these substantial errors: This Court should exercise its authority under 28 U.S.C. §2106 to vacate the lower court's rulings and remand the case. On remand, the district court should be instructed to overrule the objections relating to the UCL claim, conduct a de novo review, recognize its established jurisdiction, and proceed with adjudication of all claims, including the UCL claim, under its original jurisdiction.

### VI. STANDARD OF REVIEW

When deciding a Rule 12(b)(6) motion to dismiss, the court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the

pleader. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Fowlkes v. Adamec,* 432 F.3d 90, 95 (2d Cir. 2005). A complaint should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle them to relief. *Allaire Corp. v. Okumus*, 433 F.3d 248, 249 (2d Cir. 2006). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Todd v. Exxon Corp*., 275 F.3d 191, 198 (2d Cir. 2001) (internal quotations and citation omitted).

However, when a court considers matters outside the pleadings for a 12(b)(6) motion, it must convert to summary judgment under Rule 56. Fed. R. Civ. P. 12(d); *Friedl v. City of New York,* 210 F.3d 79, 83 (2d Cir. 2000). Parties must have the opportunity to present pertinent material. Fed. R. Civ. P. 12(d).

This Court applies *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986) for summary judgment standards. Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Id. at 247. Evidence must be viewed favorably to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

When considering conversion from a 12(b)(6) motion to summary judgment, converting without proper notice and discovery opportunity can be reversible error. *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000).

**A. The District Court Erred as A Matter of Law When It Failed To Overrule Plaintiff's Objections To The Report And Recommendation On UCL Claims, Warranting Reversal Under 28 U.S.C. §2106.**

The District Court's judgment is fundamentally flawed due to its failure to address Plaintiff's timely and specific objections to the Magistrate Judge's Report and Recommendation (R&R) on the Unfair Competition Law (UCL) claim. This omission violates the court's duty to conduct a de novo review under 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(3), which the Second Circuit has deemed "plain error." *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989).

**1. De Novo Review Standard for Magistrate Judge Recommendations**

The bedrock of judicial review in the federal system is codified in 28 U.S.C. § 636(b)(1), which mandates that a district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." This statutory requirement is reinforced in Federal Rule of Civil Procedure 72(b)(3). The Second Circuit has consistently held that "where objections are 'specific and supported by legal authority,' the district judge must 'determine de novo any part of the magistrate judge's disposition that has been properly objected to.'" *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998).

**2. District Court's Complete Silence on Valid and Unopposed Objections**

Plaintiff filed timely and specific objections on November 12, 2023 [A-388:8-389:27], and amended objections on November 20, 2023 [A-417:3-419:25], challenging the R&R issued on October 30, 2023 [A-32-45]. The Defendant filed no

- 18 -

opposition to these objections. Despite this, the District Court's judgment remained entirely silent regarding these properly filed objections. This omission violates the court's duty to conduct a de novo review under 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(3), which the Second Circuit has deemed "plain error" (*Grassia v.* Scully, 892 F.2d 16, 19 (2d Cir. 1989)).

The Court's silence on the UCL claim objections renders the judgment untenable and necessitates reversal. Under 28 U.S.C. §2106, this Court has broad authority to "require such further proceedings to be had as may be just under the circumstances" (*United States v. Salameh*, 84 F.3d 47, 54 (2d Cir. 1996)). The Second Circuit has consistently upheld this principle. In *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998), the court held that "where objections are 'specific and supported by legal authority,' the district judge must 'determine de novo any part of the magistrate judge's disposition that has been properly objected to.'"

This Circuit has consistently held that such silence warrants reversal. *Doe v. Colgate University,* 5 F.4th 194, 203 (2d Cir. 2021) (holding "a district court's failure to conduct the required de novo review of a party's timely objections is grounds for remand"). The Supreme Court in *Thomas v. Arn*, 474 U.S. 140, 154 (1985), clarified that while the statute "does not on its face require any review at all... of any issue that is not the subject of an objection," this implies that issues subject to objection must be reviewed.

Recent Second Circuit precedent confirms that a district court's silence on properly raised objections constitutes reversible error. See Doe v. Colgate University, 5 F.4th 194, 203 (2d Cir. 2021) (holding "a district court's failure to conduct the required de novo review of a party's timely objections is grounds for remand").

### 3. The Magistrate Judge's Failure to Consider Binding *Banga I* Precedent

The Magistrate Judge overlooked the California Court of Appeal's binding decision in Banga I, which explicitly stated:

> "On remand, Banga may also be able to plead a claim under the Unfair Competition Law. (Bus. & Prof. Code, §17200.)
>
> Unfair competition claims may be based on violations of other statutes, including state laws that govern information-sharing practices. (See *Cisneros v. U.D. Registry, Inc.* (1995) 39 Cal.App.4th 548, 563-564 [violations of credit and consumer reporting laws].) A single unfair or unlawful act may suffice. (*Klein v. Earth Elements, Inc.* (1997) 59 Cal.App.4th 965, 968, fn. 3.) Injunctive relief-e.g., an order to produce the medical records-is available (see Bus. & Prof. Code, § 17203), and the limitations period is four years. (See Bus. & Prof. Code, § 17208; *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal. 4th 163, 178-179 [four-year limitations period usually applies even if claim is based on violation of statute with shorter limitations period]).
>
> Here, Banga may be able to base an unfair competition claim on the Regent's violation of section 123110…On remand she may revisit the remedies in a second amended complaint."[A-303-304]

### 4. Critical Omissions from the RFAC Demonstrating Claim's Timeliness

The R&R overlooked key factual allegations from the RFAC, contained in paragraphs 42-47. These paragraphs, supported by admissible evidence including declarations and court records, established:

- 20 -

- Paragraph 42: On October 1, 2019, Court of Appeal authorized UCL claims based on the violation of Section 123100. [A-57:17-18:15, A-303-304]

- Paragraph 43: On February 24, 2020, Court allowed Second Amended Complaint filing. [A-58:16-18; A-234]

- Paragraph 44: Plaintiff requested "objective findings" from 2012 and 2013 ABR Testing. [A-234; A-308]

- Paragraph 45: On March 16, 2020, Plaintiff filed Second Amended Complaint. [A-58:22-59:4, A-234]

- Paragraph 46: On October 15, 2020, Defendants filed Answer to Third Amended Complaint. [A-59:5-10; A-234]

- Paragraph 47: On March 29, 2021, Plaintiff voluntarily dismissed claims without prejudice. [A-234; A-336]

Instead, the Magistrate Judge erroneously concluded: "This cause of action accrued nine years ago and is therefore time-barred." [A-42]

> "The statute of limitations for California Business & Professions Code § 17200 is four years. Bus. & Prof. § 17208. Under this cause of action, Plaintiff alleges that Defendant engaged in an unfair business practice by failing to provide her with the computerized data from the 2012 and 2013 ABR tests, harming her personal injury settlement in 2014 and leading to unnecessary ABR testing in 2013 and 2014. RFAC, ¶95. This cause of action accrued nine years ago and is therefore time-barred." [A-42]

This ruling shows that the Magistrate Judge's failure to adhere to *Banga I* and the RFAC's factual timeline led to an erroneous conclusion regarding the claim's timeliness. Applying the October 1, 2019 accrual date established by the Court of Appeal, the UCL claim filed November 17, 2022, falls within the 4-year limitation period. By overlooking this starting point and subsequent actions in the RFAC, the Magistrate Judge effectively nullified the Court of Appeal's decision. This error led

- 21 -

to a miscalculation of the UCL claim's filing deadline, contravening binding precedent and producing a flawed analysis. As a result, a timely filed claim was unjustly barred, depriving Appellant of due process.

### 5. Relief Required Under 28 U.S.C. §2106

The Second Circuit has consistently held that when a district court fails to properly consider objections to a magistrate's report, "the better course is to remand." *United States v. Hernandez-Rodriguez,* 352 F.3d 724, 730 (2d Cir. 2003). This principle reflects the fundamental importance of meaningful judicial review of properly raised objections.

Accordingly, this Court should exercise its authority under 28 U.S.C. § 2106 to vacate and remand with specific instructions. The district court should be directed to:

- Conduct a de novo review of the plaintiff's UCL objections;
- Consider the full factual context presented in the RFAC; and
- Reevaluate the UCL claim in light of Banga I's holdings.

Such a remand is not merely procedural - it is essential to secure the just determination of these proceedings, as contemplated by §2106. The district court's complete silence on Plaintiff's properly raised objections contravenes established Second Circuit precedent requiring meaningful review of specific objections to magistrate recommendations.

///
///
///

- 22 -

**B. The District Court's Inconsistent Rulings On Subject Matter Jurisdiction And Improper Declination Of Diversity Jurisdiction Resulted From Duty Abdication Under 28 U.S.C. §636(B) And FRCP 72(B)(3), Failing To Address UCL Claim Objections, Warranting Remand Under 28 U.S.C. §2106.**

The district court's mishandling of subject matter jurisdiction necessitates reversal and remand under 28 U.S.C. § 2106. The court's fundamental error was its failure to address timely objections to the Magistrate Judge's R&R on the UCL claim, violating its statutory duty under 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(3) to conduct a de novo review. The Second Circuit has deemed such omissions "plain error" (*Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989)). Had the court fulfilled its duty, it would have recognized the UCL claim's timeliness based on the *Banga I* holding, fundamentally altering the case's trajectory and preventing subsequent jurisdictional missteps.

## 1. Permanence of Established Subject Matter Jurisdiction

Federal courts must establish subject matter jurisdiction before ruling on a case's merits, a requirement the Supreme Court has declared "inflexible and without exception" (*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998)). Without jurisdiction, a court's only function is to announce this fact and dismiss the case (*Ex parte McCardle*, 74 U.S. 506, 514 (1868)).

The district judge's initial ruling on jurisdiction was accurate and well-founded, stating: "The Court has diversity jurisdiction over this case, based on the

pleadings. Banga is a citizen of California, Lustig is a citizen of New York, and Banga's complaints plausibly alleged damages in excess of $75,000. See Dkt. I ¶¶ 1-9, 131; 28 U.S.C. §1332." [A-25] This ruling correctly applied the principle that federal court jurisdiction is determined at the time of filing.

### 2. The Time-of-Filing Rule Mandates Retention of Diversity Jurisdiction

The district court erred in declining diversity jurisdiction over the remaining claim, contravening the well-established time-of-filing rule. This principle, consistently upheld by both the Supreme Court and the Second Circuit, dictates that diversity is determined at the time of filing and is not divested by subsequent events.

The Supreme Court established this rule in *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289-90 (1938), and reaffirmed it in *Freeport-McMoRan, Inc. v. K N Energy, Inc*., 498 U.S. 426, 428 (1991), holding explicitly that "if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events." The Second Circuit has consistently applied this rule in cases such as *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.,* 166 F.3d 59, 62 (2d Cir. 1999), *Scherer v. Equitable Life Assurance Soc'y of U.S.,* 347 F.3d 394, 397 (2d Cir. 2003), and *Vera v. Banco Bilbao Vizcaya Argentaria, S.A.,* 946 F.3d 120, 134 (2d Cir. 2019).

The district court's decision to decline diversity jurisdiction over the remaining claim constitutes a clear error. By allowing post-filing events to divest it

of jurisdiction, the court has directly contravened well-established Second Circuit precedent, undermining the stability and predictability that the time-of-filing rule is designed to provide and raising concerns about adherence to binding precedent.

### 3. Contradictory Rulings on Jurisdiction

The district court's actions present a clear contradiction that violates fundamental principles of federal jurisdiction. By making merit-based determinations—finding a state law claim meritorious and timely, and dismissing related claims with prejudice based on preclusion—before declining jurisdiction over the remaining claims, the court acted in direct contravention of the Supreme Court's mandate that jurisdiction is a threshold matter (*Steel Co. v. Citizens For A Better Environment,* 523 U.S. 83, 94-95 (1998)).

This error is compounded by the court's violation of the well-established time-of-filing rule, which dictates that "if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events" (*Freeport-McMoRan, Inc. v. K N Energy, Inc.,* 498 U.S. 426, 428 (1991)). The Second Circuit has consistently upheld this principle, as stated in *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 301 (2d Cir. 2004), following the Supreme Court's decision in *Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 567, 570-71 (2004): "The Second Circuit follows the time-of-filing rule for determining whether federal diversity jurisdiction exists."

If the district court had determined it lacked subject matter jurisdiction, it was obligated to announce this fact and dismiss the case outright, as established in *Ex parte McCardle,* 74 U.S. 506, 514 (1868). The court's failure to do so, coupled with its merit-based rulings, further underscores the inconsistency in its approach to jurisdiction.

These errors occurred against the backdrop of the district court's complete silence on the timely objections [A-388:8-389:27; A-417:3-419:25] to the Magistrate Judge's R&R on the UCL claim. This failure to conduct required de novo review compounds the jurisdictional errors and further demonstrates the need for reversal.

Given these substantial errors, the district court's judgment is fundamentally flawed. The court has violated Supreme Court mandates, Second Circuit precedent, and statutory requirements. This Court has both the authority and the obligation under 28 U.S.C. §2106 to reverse the district court's judgment. Accordingly, Appellant respectfully urges this Court to reverse and remand for proper consideration of the plaintiff's objections and correct application of jurisdictional principles.

**C. The District Court erred as a matter of law in failing to address objections to the UCL claim, resulting in erroneous declination of supplemental jurisdiction, warranting reversal under 28 U.S.C. §2106.**

The district court's failure to address timely objections to the Magistrate Judge's R&R on the UCL claim constitutes reversible error. This oversight led to an erroneous declination of supplemental jurisdiction, contravening 28 U.S.C. § 636(b)(1) and

Federal Rule of Civil Procedure 72(b)(3). While decisions to decline supplemental jurisdiction are typically reviewed for abuse of discretion (*Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009)), the legal error underlying this decision necessitates a de novo review (*Pricer v. Deutsche Bank,* 842 F.3d 583, 588 (7th Cir. 2016)). Given the gravity of this error and its potential to set a dangerous precedent, this Court should exercise its authority under 28 U.S.C. § 2106 to vacate the lower court's ruling and remand with instructions to conduct the requisite de novo review.

### 1. District Court's Critical Oversight and Procedural Background

A. Timeline of Critical Events

- Banga filed timely objections on November 12, 2023. [A-388:8-389:27]

- Amended objections were submitted on November 20, 2023. [A-417:3-419:25]

- These objections addressed the October 30, 2023 Recommendation. [A-32-45]

### 2. Consequences of the Oversight

The court's failure to consider these objections led to three critical oversights:

- The UCL claim, with its four-year statute of limitations (Bus. & Prof. Code, § 17208), is unquestionably timely and viable. [A-303-304]

- The California Court of Appeal in Banga I explicitly recognized the potential viability of the UCL claim. [A-303-304]

- Proper consideration of the UCL claim would have reaffirmed the court's original jurisdiction.

### 3. Legal Principles Governing Supplemental Jurisdiction

The broad discretion granted to federal courts under 28 U.S.C. § 1367 to exercise supplemental jurisdiction over state law claims is a cornerstone of judicial efficiency and fairness. The Supreme Court has emphasized the critical role of supplemental jurisdiction in promoting judicial economy, convenience, and fairness to litigants (*United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)). While §1367(c) outlines circumstances where courts may decline such jurisdiction, this decision must be anchored in a careful balancing of statutory factors and overarching values (*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Crucially, when faced with objections to a magistrate judge's R&R, the district court's obligation to conduct a de novo review is mandatory, not discretionary.

### 4. Analysis of the District Court's Error

### a. Mischaracterization of Jurisdiction as Discretionary

The district court's failure to overrule objections to the UCL claim represents a fundamental misunderstanding of its jurisdictional obligations. This error transformed what should have been a mandatory exercise of jurisdiction into an improper discretionary decision.

The court's original jurisdiction, established by the initial complaint and reinforced by the timely UCL claim permitted by the Court of Appeals on October 1, 2019, in *Banga I*, was incontrovertible. By declining jurisdiction after more than a year

of active litigation—from November 17, 2022, to December 20, 2023—the court not only misapplied legal principles but also squandered significant judicial resources.

### b. Erroneous Reasoning Regarding Familiarity with State Law

The court's apparent unfamiliarity with California law cannot serve as a valid basis for declining supplemental jurisdiction. This reasoning contradicts the well-established principle that federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred upon them, including supplemental jurisdiction over state law claims (*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). The court's reluctance to engage with state law not only abdicates its judicial responsibility but also undermines the very purpose of supplemental jurisdiction in promoting judicial economy and fairness.

### c. Failure to Consider Certification to California Supreme Court

The district court failed to consider certifying questions to the California Supreme Court, an oversight that constitutes an abuse of discretion. This neglect violates the principles established in *Lehman Brothers v. Schein*, 416 U.S. 386, 391 (1974), which expressly endorsed certification for novel state law questions as a viable alternative to declining supplemental jurisdiction. By failing to explore this option, the court prematurely abandoned its jurisdictional obligations and denied the parties authoritative resolution of state law issues.

### 5. Justification for Remand Under 28 U.S.C. § 2106

The District Court's failure to review Plaintiff Banga's objections to the Magistrate Judge's R&R on the UCL claim contravenes 28 U.S.C. § 636(b)(1) and Federal Rule 72(b)(3), undermining the magistrate judge system's integrity. This oversight violates statutory obligations and misapplies fundamental principles of supplemental jurisdiction, disregarding *United Mine Workers v. Gibbs* factors and the "virtually unflagging obligation" established in *Colorado River*.

This error, if left uncorrected, threatens the consistent application of federal and state law, efficient use of judicial resources, and the plaintiff's right to fair adjudication. Therefore, given these grave implications, this Court must intervene under 28 U.S.C. §2106. Specifically, this Court should vacate the lower court's rulings and remand with instructions to conduct a de novo review of all objections, particularly those relating to the UCL claim. Such action is imperative to ensure proper administration of justice, maintain judicial integrity, and provide the parties with the fair and thorough review to which they are entitled.

### D. The District Court Erred as A Matter of Law By Abdicating Its Statutory Duty Of De Novo Review, Failing To Address The Magistrate Judge's Violations Of Rules 12(D) And 56(C), Thereby Shielding Potential Fraud And Improperly Converting A Motion To Dismiss Into A De Facto Summary Judgment.

When a motion to dismiss is converted into a motion for summary judgment, it fundamentally alters the proceedings, necessitating careful, independent review

by the district court. This conversion is not merely procedural; it reshapes the entire framework of the proceedings. In such circumstances, the district court's review of a magistrate judge's Report and Recommendation is not discretionary; it is a statutory mandate governed by 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(3).

These provisions mandate de novo review of properly objected portions — a bedrock principle of judicial integrity. The Supreme Court, in *United States v. Raddatz and Mathews v. Weber,* unequivocally emphasized that district courts must approach these matters anew, without deference to prior findings. The case at hand exemplifies how the District Court's failure to fulfill its statutory duty in the context of a converted motion undermines the entire judicial process and warrants reversal and remand under 28 U.S.C. §2106.

## I. MAGISTRATE JUDGE'S PROCEDURAL ERRORS

### a.  Improper conversion of motion to dismiss without adhering to rule 12(d)

The magistrate judge's handling of Defendant's motion to dismiss violated Federal Rule of Civil Procedure 12(d). This rule explicitly states:

> "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Despite this clear mandate and explicit notice from Defendant on May 18, 2023, [A-80: 7-28; A-84-85] regarding potential conversion to summary judgment,

the magistrate judge failed to adhere to proper conversion standards. The introduction of new evidence in Defendant's Reply and Declaration on September 8, 2023, triggered the protections of Rule 12(d). [A-221-15-20]

Recognizing the critical nature of the new information, Plaintiff promptly filed a motion on September 11, 2023, seeking permission to file a surreply or requesting in camera review of medical records. [A-360-368] However, on September 14, 2023, the magistrate judge summarily denied this motion, rejecting both the request for a surreply and the in camera review of medical records [A-47] This denial stands in direct contravention of well-established Second Circuit precedent.

Notably, in *Bayway Refining Co. v. Oxygenated Mktg. & Trading A.G.,* 215 F.3d 219, 226-27 (2d Cir. 2000), this Court unequivocally ruled that when new evidence is introduced in a reply brief, the non-moving party must be afforded an opportunity to respond. The magistrate's decision thus not only disregards this binding precedent but also undermines the fundamental principles of procedural fairness and due process.

**b. Arbitrary Denial of Plaintiff's Unopposed Motion for Limited Discovery**

Following the denial of her initial motion, Plaintiff filed an unopposed Motion for Leave to Depose Dr. Lustig on October 20, 2023, specifically regarding the confidentiality of medical records. [A-369-371] The magistrate judge, however,

summarily denied this motion with a mere 14-word ECF text entry. [A-46] This extraordinarily cursory order warrants reversal due to its brevity and conspicuous lack of substantive reasoning. In *Jackson v. Burke*, 256 F.3d 93, 95 (2d Cir. 2001), this Court explicitly criticized such "conclusory orders" and vacated a similarly terse decision.

Similarly, the order at issue here lacks analysis on deposition standards or relevance, precluding meaningful review and undermining judicial transparency. This arbitrary denial violates *Anderson v. Liberty Lobby, Inc.,* which mandates "full opportunity to conduct discovery" before summary judgment. By blocking this crucial deposition, the magistrate judge disregards this principle, compromising Plaintiff's ability to contest de facto summary judgment and the judicial process's integrity.

Moreover, as emphasized in *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000), "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." The Supreme Court has also noted that "summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986). When a party has not had any opportunity for discovery, summary judgment is generally premature. See *Berger v. United States,* 87 F.3d 60, 65 (2d Cir. 1996).

## II. THE DISTRICT COURT'S COMPOUNDING ERRORS

The District Court's affirmation of the Magistrate Judge's R&R without conducting the required independent review constitutes reversible error, particularly given the conversion of the motion to dismiss into a summary judgment motion. This abdication of duty violates 28 U.S.C. § 636(b)(1) and FRCP 72(b)(3). As the Supreme Court held in *United States v. Raddatz and Mathews v. Weber*, the district court must consider the matter anew, without deference to the Magistrate's findings. In the instant case, the District Court's cursory treatment of Plaintiff's objections clearly fails to meet this standard, as evidenced by its statement.

> "Reading the objections liberally, Banga next appears to assert that the Court should order Lustig to 'produce the relevant medical records under seal for in camera review' and grant her motion for leave to depose Lustig, as such discovery would assist this Court in resolving Lustig's pending motion to dismiss. Pl. Obj. at 6-8. The basis for the Report's recommendation to dismiss, however, was that Banga's claims were all precluded by res judicata or time-barred. Report at 10. Banga does not explain why discovery could undermine these determinations. Given the nature of the Report's conclusions, production of the allegedly withheld medical records or testimony from Lustig could not do so. The Court overrules this objection."[A-21-22]

This statement reveals three critical errors:

### a. Improper Burden Shifting:

The Court wrongly places the onus on Plaintiff to explain why discovery could undermine the determinations, contrary to *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), which assigns this responsibility to the summary judgment movant.

### b. Denial of Opportunity to Develop the Record:

By affirming discovery denial, the Court places Plaintiff in an untenable position facing potential summary judgment without adequate means to respond, violating principles in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) and *Celotex*.

### c. Improper Weighing of Evidence:

The Court's approach contradicts Anderson's directive that a judge should not weigh evidence but determine if there's a genuine issue for trial. By denying discovery and shifting the burden, the Court prevents Plaintiff from presenting evidence that could create such an issue.

### 1. Failure to Order Production of Medical Records

The District Court's failure to order the Defendant to produce the medical records, despite Plaintiff providing her authorization [A-360-371; A-394] constitutes a clear abuse of discretion. This inaction not only disregards the potential relevance of these records to the claims at hand but also ignores the Plaintiff's proactive efforts to facilitate the discovery process.

### 2. Relevance and Importance of Medical Records

The medical records in question are potentially crucial to the Plaintiff's case. By failing to order their production, the District Court has effectively prevented the Plaintiff from accessing evidence that were pivotal in supporting her claims or refuting the Defendant's assertions. This inaction is particularly troubling given

Defendant's In *Banga v. Regents of the Univ. of Cal.* (Oct. 1, 2019, A151758) [nonpub. opn.] (*Banga I*): Defendants argued that certain records were not "documents commonly found in a medical chart." The court rejected this argument, citing the broad definition of "patient records" under § 123105, subd. (d).[A-302-303]

- In *Banga I*: Defendants argued that certain records were not "documents commonly found in a medical chart." The court rejected this argument, citing the broad definition of "patient records" under § 123105, subd. (d).[A-302-303]

- In *Banga II*: Defendants claimed that "Plaintiff's claim essentially amounted to spoliation of evidence... and therefore have no duty to preserve." Based on this representation, the court erroneously concluded that the defendants had no duty to preserve the documents. [345-354]

- In the current federal proceeding: Defendants now state: "Plaintiff's medical records have been produced to her on numerous occasions... In light of the fact that these are confidential records, a copy will not be provided herewith, however, with the Court's permission and/or plaintiff's agreement, they can be produced."[A-221:15-20]

### 3. Potential for Fraud/Misrepresentation and Ongoing Breach of Fiduciary Obligations

The denial of the plaintiff's request to depose Dr. Lustig or conduct an in camera review of medical records raises significant concerns regarding potential fraud, misrepresentation, and ongoing breaches of fiduciary duty. The following points highlight the critical importance of these denied requests in uncovering crucial information:

- 36 -

a.  Given the confidential nature of the medical records, the deposition was likely the only means for the plaintiff to gain insight into their contents and handling without compromising confidentiality. As the Supreme Court noted in *Hickman v. Taylor,* 329 U.S. 495, 507 (1947), "Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had."

b.  Dr. Lustig's inconsistent statements about the existence and nature of these records across different proceedings necessitated direct questioning to reconcile these discrepancies. The confidentiality classification adds further complexity that only a deposition could adequately address.

c.  The deposition would have allowed the plaintiff to determine why and when these records were classified as confidential, providing crucial information for understanding Dr. Lustig's actions and motivations. This directly relates to potential fraudulent conduct and its impact on the res judicata determination.

d.  The confidential nature of the records raises significant questions about Dr. Lustig's fulfillment of his fiduciary duty to the plaintiff. As noted in *Pegram v. Herdrich*, 530 U.S. 211, 224 (2000), the fiduciary duty in medical contexts includes obligations of loyalty and care. The deposition was crucial to explore how the confidentiality classification aligned with these duties.

4.  **Abuse of Discretion in Discovery: Grounds for Reversal and Remand Under 28 U.S.C. § 2106**

Although district courts possess broad discretion in managing discovery, this authority has limits. Here, the court's failure to order the production of potentially crucial evidence—despite conflicting statements by the Defendants and the Plaintiff's explicit authorization—constitutes an abuse of discretion. As this Court

held in *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001), a district court abuses its discretion when its decision "cannot be located within the range of permissible decisions."

The cumulative effect of three procedural errors—the Magistrate Judge's hasty denial of the Plaintiff's deposition motion, the District Court's lack of independent review, and its disregard for new information in the Defendant's Reply—has deprived the Plaintiff of a fair opportunity to present her case. The Second Circuit consistently holds that such errors warrant reversal and remand. In *Schwartz v. Compagnie General Transatlantique*, 405 F.2d 270, 275 (2d Cir. 1968), the court stated:

> "Where a party has not had an opportunity to contest a point, it would be unfair in the extreme to permit the opposing party to rest on that point and to permit the district court to consider it. We have reversed and remanded in similar circumstances... and we do so here." This principle was reaffirmed in *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009).

The procedural errors in this case mirror those in *Schwartz and Hernandez*, where the Second Circuit found reversal and remand necessary. Accordingly, pursuant to 28 U.S.C. §2106, Plaintiff requests that on remand, the District Court be directed to provide the plaintiff with full access to necessary medical records and the opportunity to depose relevant witnesses, particularly Dr. Lustig. These measures are essential to ensure a comprehensive examination of the facts, proper application of res judicata, and accurate determination of the appropriate statute of limitations.

**E. The District Court erred as a matter of law in applying res judicata to bar Appellant's non-statutory claims, disregarding the voluntary dismissal without prejudice of related statutory claims, misapplying legal principles, and overlooking procedural errors that violated Appellant's due process rights.**

The district court's application of res judicata to bar Appellant's non-statutory claims constitutes reversible error for two fundamental reasons: (1) the lack of final judgment on the statutory claims upon which the non-statutory claims are premised, and (2) the emergence of new information suggesting that the defendant may have obtained judgment for non-statutory claims through misrepresentation or fraud. These critical factors render res judicata inapplicable in this case.

**1. The Voluntary Dismissal Without Prejudice of Appellant's Statutory Claims Precludes the Application of Res Judicata to the Derivative Non-Statutory Claims**

It is a well-established principle in this Circuit that a voluntary dismissal without prejudice does not operate as an adjudication upon the merits and cannot serve as a basis for res judicata. *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 383 (2d Cir. 2003) ("It is clear that a dismissal without prejudice has no res judicata effect."). This Court has repeatedly held that such a dismissal "leaves the situation as if the action had never been filed." *Pozdniakov v. Justice Court*, 369 F. App'x 225, 226 (2d Cir. 2010).

In the present case, Appellant's voluntary dismissal of her statutory claims without prejudice means these claims remain unadjudicated. [A-336; A-340] The

non-statutory claims at issue - breach of fiduciary duty, common count, constructive fraud, unjust enrichment and emotional distress - are inextricably linked to and derive directly from these unadjudicated statutory claims. The district court's misapplication of res judicata to these derivative claims contradicts this Court's precedent and threatens to undermine fundamental principles of civil procedure.

This principle aligns with California law, which governs the substantive aspects of res judicata in this diversity action. The California Supreme Court has held that "the effect of a voluntary dismissal is to leave the proceedings as though the action had never been brought." *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism*, 6 Cal.5th 1207, 1218 (2018).

### a. Lack of Adjudication on Primary Statutory Claims

The cornerstone of res judicata is the existence of a final judgment on the merits. This requirement serves a crucial gatekeeping function, ensuring that parties have had a full and fair opportunity to litigate their claims before being barred from raising them again. The statutory claims in this case - which form the foundation of the current non-statutory claims - were voluntarily dismissed without prejudice, precluding any final judgment on their merits.

This Court's jurisprudence has consistently emphasized that res judicata cannot apply absent a final adjudication. In *Maharaj v. Bankamerica Corp*., 128 F.3d 94, 97 (2d Cir. 1997), this Court established that claims must have been

"actually litigated and decided" in the prior action for res judicata to apply. The voluntary dismissal of statutory claims specifically prevents such actual litigation and decision.

### a. Preclusion of Res Judicata for Derivative Non-Statutory Claims

The relationship between the statutory and non-statutory claims is central to understanding why res judicata cannot apply here. The non-statutory claims represent alternative legal theories for seeking redress for the same underlying rights violations that were voluntarily dismissed without prejudice. These claims include:

- Breach of fiduciary duty based on the statutory obligations
- Common count arising from the statutory violations
- Constructive fraud stemming from the statutory duties
- Unjust enrichment resulting from the statutory breaches
- Emotional Distress resulting from the statutory breaches

Each non-statutory claim derives its fundamental basis from the unadjudicated statutory claims. This derivative relationship creates an insurmountable barrier to applying res judicata, as the foundation claims themselves remain open for litigation.

### 2. Res Judicata is inapplicable due to new evidence and misrepresentation

Beyond the procedural bar to res judicata created by the voluntary dismissal, the emergence of new evidence and the defendants' pattern of misrepresentation across different proceedings independently preclude its application. Courts have

long recognized that res judicata cannot shield parties who obtain judgments through misrepresentation or who take materially inconsistent positions across proceedings.

### a. Pattern of Defendant's Contradictory Statements

The defendants have maintained materially inconsistent positions regarding the medical records across three separate proceedings, undermining any legitimate application of res judicata:

> In *Banga I*, defendants asserted that "the type of records at issue here are not 'documents commonly found in a medical chart.'" [A-302-303]

> In *Banga II*, defendant shifted his position, arguing that Plaintiff's claim "essentially amounted to spoliation of evidence," [A-348],

> Most recently, in filings before this Court, defendant has asserted: "Plaintiff's medical records have been produced to her on numerous occasions.... In light of the fact that these are confidential records, a copy will not be provided herewith, however, with the Court's permission and/or plaintiff's agreement, they can be produced." [A-221:15-20]

These shifting positions are not mere refinements of legal arguments but represent fundamentally incompatible factual assertions about the existence, nature, and availability of the disputed records. Such contradictions go to the heart of the litigation and render res judicata inappropriate as a matter of law and equity.

### 3. Legal Framework for New Evidence Exception

The principle that res judicata is inapplicable when judgment is obtained through misrepresentation finds strong support in federal precedent. In *Kenner v. Commissioner of Internal Revenue,* 387 F.2d 689 (7th Cir. 1968), the court established that res judicata

cannot be used to shield judgments obtained through misrepresentation. This exception to res judicata serves the essential purpose of preventing parties from benefiting from their own inconsistent statements to courts.

### 4. Misapplication of the "Primary Rights" Theory

The district court's error extends beyond its mishandling of the voluntary dismissal and new evidence issues to a fundamental misapplication of California's "primary rights" theory. Under *Boeken v. Philip Morris USA, Inc*., 48 Cal. 4th 788, 797 (2010), the primary rights theory requires courts to identify the specific right at issue rather than focusing solely on the legal theories advanced.

In this case, the primary rights associated with the California UCL and Health & Safety Code Section 123100 claims were never adjudicated due to the voluntary dismissal without prejudice. The current non-statutory claims, while presenting different legal theories, arise from these same unadjudicated primary rights. This distinction is crucial because it demonstrates that the district court's application of res judicata effectively barred claims based on rights that have never been litigated.

The California Supreme Court's holding in *Slater v. Blackwood*, 15 Cal. 3d 791, 795 (1975), that "Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief," presupposes that the underlying injury has been adjudicated. Here, the voluntary dismissal of the statutory claims means the underlying injuries remain

- 43 -

unadjudicated, rendering the primary rights theory inapplicable as a basis for res judicata. [A-336, A-340]

### 5. Impact on Judicial Economy and System Integrity

The district court's misapplication of res judicata creates concerning precedent that undermines both judicial economy and the integrity of the legal system. By applying res judicata to claims derived from voluntarily dismissed statutory claims, the court effectively penalizes plaintiffs for utilizing the voluntary dismissal mechanism that civil procedure rules explicitly provide.

### 6. Violation of FRCP 12(d) and Response Rights

The court's handling of new evidence introduced in the defendant's Reply and Declaration (A-221:15-20] on September 8, 2023, violated fundamental principles of civil procedure. Under *Bayway Refining Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226-27 (2d Cir. 2000), parties must have the opportunity to respond to new evidence introduced in reply briefs. The court's denial of Appellant's motion to file a surreply or request in camera review [A-47, A-360-368] effectively prevented Appellant from addressing crucial new evidence.

### 7. Discovery Obstruction

The denial of the motion to depose Dr. Lustig represents more than a routine discovery dispute. This denial effectively prevented Appellant from developing evidence that could have:

- Challenged the application of res judicata
- Established the full factual basis of her claims
- Exposed potential misrepresentations by defendants
- Developed the record regarding the contradictory statements about medical records
- Failure of De Novo Review: Grounds for Reversal Under 28 U.S.C. § 636(b)(1)"

The District Court's perfunctory review of the Magistrate Judge's Report and Recommendation (R&R) violated both 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(3). As the Supreme Court held in *Summers v. Earth Island Institute,* 555 U.S. 488, 493 (2009), "the district judge must review the magistrate judge's findings and recommendations de novo if objection is made." The court's cursory analysis of res judicata for non-statutory claims clearly fails to meet this standard.

The district court's one-sentence disposition—stating merely that "Banga misunderstands the primary rights test under California res judicata law, as thoughtfully addressed in the Report" [A-24]—violated the fundamental principle that courts must "give fresh consideration to those issues to which specific objections have been made" (*McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 157 (2d Cir. 2017)). This procedural error prevented meaningful appellate review and warrants correction under 28 U.S.C. §2106.

Under 28 U.S.C. §2106, this Court has broad authority to remedy such errors through reversal, remand, or modification of the judgment. This authority is

particularly crucial here, where the district court's failure to conduct the required de novo review led to a misapplication of res judicata principles. The error is especially significant because:

- The statutory claims were voluntarily dismissed without prejudice
- New evidence suggests potential misrepresentation by defendants
- The fundamental prerequisites for res judicata were not properly considered

For these reasons, this Court should reverse the district court's erroneous application of res judicata to Appellant's non-statutory claims. The district court's failure to conduct proper de novo review of the R&R, particularly regarding the UCL claim, constitutes reversible error under 28 U.S.C. §2106. Remand is necessary to ensure proper consideration of the claims' merits and to uphold fundamental principles of fairness and due process.

## F. The District Court's erroneous limitation of remedies under Cal. Health & Saf. Code §123110 and failure to conduct proper de novo review warrant reversal

The district court erred in adopting the magistrate's finding that remedies for violations of Cal. Health & Saf. Code §123110 are limited to injunctive relief. This error was compounded by the court's failure to address the plaintiff's objections to the R&R regarding the UCL claim, constituting a procedural error that warrants reversal under 28 U.S.C. §2106. Had the court conducted a proper de novo review of the UCL claim, it would have discovered that *Banga I* is not restricted to injunctive relief. The California Court of Appeal explicitly recognized the

availability of "other appropriate relief" for violations of Cal. Health & Saf. Code §123110, beyond mere injunctive measures. The court emphasized a plaintiff's right to amend their complaint to seek such relief, clearly indicating that remedies are not limited to injunctive relief alone. Given these legal principles and the district court's missteps, reversal is warranted based on the following grounds:

## 1. The District Court's Interpretation of Cal. Health & Saf. Code §123110 remedies is legally erroneous

The district court's interpretation that Section 123110 is limited to injunctive relief is erroneous, relying on outdated cases. The court's flawed reasoning is evident in its statement:

> "And the surviving § 123110 claim permits only injunctive relief. See *Lanham v. County of Los Angeles*, No. B252156, 2014 WL 1682896, at *4 (Cal. App. 2d Dist. Apr. 29, 2014) (damages unavailable on § 123110 claim); *Maher v. County of Alameda*, 168 Cal. Rptr. 3d 56, 66 (App. 1st Dist. 2014) (same)." [A26]

However, the court's reliance on *Lanham* (2014) and *Maher* (2014) is misplaced, as these cases have been superseded by more recent and directly relevant decisions. Specifically, *Banga I* and its subsequent decision (Banga II) provide a current and authoritative interpretation of §123110, rendering the court's ruling inaccurate and outdated.

In *Banga I,* the Court of Appeal addressed *Maher's* holding but provided a broader perspective that significantly alters the interpretation of available remedies under §123110:

"Second, the Regents argue that Banga cannot enforce her request for her records because her complaint seeks compensatory damages, which are not permitted in an action to enforce section 123110. (See *Maher v. County of Alameda* (2014) 223 Cal.App.4th 1340, 1354.) This argument makes no sense—the mere fact that Banga sought compensatory damages in her prior complaint does not preclude her from amending her complaint to seek other appropriate relief." [A-304]

This statement from *Banga I* is crucial as it directly challenges the narrow interpretation adopted by the district court. While acknowledging Maher's position on compensatory damages, the Banga I court explicitly recognizes the possibility of "other appropriate relief" beyond mere injunctive measures. This broader interpretation opens the door to a wider range of potential remedies under § 123110, directly contradicting the district court's limited view.

## 2. Expansion of Potential Remedies

By overlooking the current California law, the district court violated the Full Faith and Credit Act, 28 U.S.C. § 1738 which requires federal courts to accurately apply state law in its most current form. Furthermore, *Banga I* expanded the scope of potential remedies by explicitly acknowledging the possibility of Unfair Competition Law (UCL) claims based on §123110 violations:

"On remand, Banga may also be able to plead a claim under the Unfair Competition Law. (Bus. & Prof. Code, §17200.) Unfair competition claims may be based on violations of other statutes, including state laws that govern information-sharing practices."

This statement is significant as it directly contradicts the district court's narrow interpretation that §123110 is limited to injunctive relief. By recognizing that

§123110 violations can form the basis for UCL claims, the Banga I court effectively opened the door to additional remedies, including restitution, which are available under the UCL.

### 3. The Violation of Full Faith and Credit Principles Necessitates Reversal

The district court's disregard for Banga I and II in favor of older cases violates the principle established in *San Remo Hotel, L.P. v. City and County of San Francisco*, 545 U.S. 323 (2005) stating that the Full Faith and Credit Act "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." By failing to consider the more recent Banga decisions, the district court did not give the same effect to these state court judgments as would be given in California courts, thereby violating the Full Faith and Credit Act. As the Second Circuit stated in *Giannone v. York Tape & Label, Inc.*, 548 F.3d 191 (2d Cir. 2008), that "federal courts must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." The district court's reliance on *Lanham* and *Maher* instead of the more recent *Banga I* decision fails to adhere to this guidance.

### 4. The Unpublished Status of *Banga I and II* is Irrelevant

The district court might argue that it was not bound by Banga I and Banga II due to their unpublished status. However, this argument fails for several reasons:

- 49 -

The Supreme Court in *Fidelity Union Trust Co. v. Field* (1940) mandated that federal courts must follow state court decisions regardless of their status under state law. This ensures consistent application of state law across both state and federal courts. *Banga I and II* represent the most recent and authoritative state court interpretations of §123110. Under the principles outlined in *West v. American Telephone & Telegraph Co.*, 311 U.S. 223 (1940), federal courts should defer to such interpretations absent compelling reasons to do otherwise: "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." Therefore, the district court's potential argument that it was not bound by *Banga I and II* due to their unpublished status is untenable under established Supreme Court precedent.

5. **Procedural Error and Abdication of Judicial Duty Mandate Reversal Under §2106**

The district court's wholesale failure to conduct de novo review of the UCL claim objections represents a complete abdication of its core judicial responsibility. De novo review is not discretionary—it is a fundamental safeguard ensuring that magistrate recommendations receive appropriate scrutiny from Article III judges. When a court bypasses this critical step, it compromises both the integrity of the judicial process and the substantive rights of the objecting party.

**6. The Error's Impact Requires More Than Mere Correction**

The implications of this procedural failure extend far beyond technical non-compliance. By failing to independently examine Plaintiff's objections, the district court:

- Deprived Plaintiff of meaningful Article III review
- Left potentially meritorious legal arguments unexamined
- Created a precedent that, if left uncorrected, would undermine the magistrate judge system's careful balance

**7. Section 2106 Provides the Necessary Remedial Authority**

Congress specifically designed §2106 to address precisely this type of fundamental error. The statute's broad grant of remedial power enables this Court to:

- Reverse the flawed judgment
- Direct proper proceedings on remand
- Ensure full and fair consideration of all objections
- Maintain the integrity of the judicial review process

**8. Reversal Serves Essential Judicial Interests**

- Reversing under §2106 achieves multiple crucial objectives:
- Reinforces the mandatory nature of de novo review
- Ensures proper consideration of all legal arguments
- Preserves the distinctive roles of magistrate and district judges
- Prevents the potential miscarriage of justice inherent in curtailed review

The district court's failure to conduct de novo review represents exactly the type of fundamental error §2106 was designed to remedy. This Court should exercise its authority under the statute to reverse and remand, thereby ensuring both procedural integrity and substantive justice.

### G. The District Court erred as a matter of law and abused its discretion in failing to grant leave to amend the complaint, violating FRCP 15(A)(2) and contradicting its own findings of merit and timeliness.

The district court committed reversible error by failing to grant leave to amend the complaint, particularly after explicitly finding that Banga's §123110 claim was both timely and meritorious with respect to her March 12, 2020's records request. This decision violates Federal Rule of Civil Procedure 15(a)(2) and contradicts the court's own substantive findings.

#### 1. The District Cour Contradicted Its Own Findings

The district court's denial of leave to amend presents a fundamental logical inconsistency that undermines its decision. The court explicitly found that "the FAC did allege one request to Lustig as to which a § 123110 claim for injunctive relief is timely," specifically identifying the March 12, 2020 request for medical records. The court determined that "Banga's reference to 'Defendants'—although not identifying Lustig by name—is properly read to include him" and concluded that Banga had "pled facts that plausibly make her § 123110 claim, based on the March 12, 2020 request, timely."

This finding directly contradicted the magistrate judge's recommendation that denied leave to amend based on futility, untimeliness, and bad faith. As established in *Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999), "futility is a determination, as a matter of law, that proposed amendments would fail to cure

- 52 -

prior deficiencies or to state a claim under Rule 12(b)(6)." The court's explicit finding that Banga plausibly pled a timely § 123110 claim negates any concern about futility.

## 2. The District Court Violated the Liberal Amendment Standard

The denial of leave to amend without justification represents a clear violation of the well-established liberal amendment standard codified in FRCP 15(a)(2) and reinforced through Supreme Court precedent. Federal Rule of Civil Procedure 15(a)(2) explicitly establishes that "the court should freely give leave when justice so requires." The Supreme Court has emphasized in *Foman v. Davis*, 371 U.S. 178, 182 (1962), that "this mandate is to be heeded" absent any apparent reason such as undue delay, bad faith, or futility of amendment.

The district court's silence regarding amendment, particularly after finding merit and timeliness in the claim, constitutes an abuse of discretion under Second Circuit precedent. As articulated in *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,* 797 F.3d 160, 190 (2d Cir. 2015), "leave to amend should be given unless there is a good reason to deny it." The court not only failed to provide such reason but actively eliminated the reasons suggested by the magistrate judge through its own findings.

## 3. Policy Considerations Supporting Amendment

The policy underlying the liberal amendment standard carries particular force where, as here, the court has recognized the substantive merit of a claim. The

Supreme Court's guidance in *Foman v. Davis*, 371 U.S. at 182, emphasizes that "if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." This principle resonates strongly in the present case, where the district court explicitly found that Banga "pled facts that plausibly make her § 123110 claim, based on the March 12, 2020 request, timely."

This policy is particularly relevant for pro se plaintiffs like Banga. The Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003), articulated this principle:

> "The policy of freely granting leave to amend should be especially liberally applied when the deficient pleading is the result of a lack of access to critical information or where, as here, the deficiencies were not previously identified by the court."

The district court's own analysis acknowledges this principle by construing Banga's reference to "Defendants" as properly including Lustig, despite not identifying him by name. This liberal construction of pro se pleadings aligns with the policy of deciding cases on their merits rather than technical pleading deficiencies.

Moreover, allowing amendment based on the court's guidance promotes judicial efficiency. The court has already conducted a detailed analysis distinguishing between timely and untimely requests, finding the March 12, 2020 request to fall within the three-year statute of limitations under Cal. Civ. Proc. § 338(a). Amendment would

- 54 -

allow Banga to refine her complaint to align with this analysis, potentially narrowing the issues in dispute and facilitating more focused litigation. This approach serves the Federal Rules of Civil Procedure's broader goal to "secure the just, speedy, and inexpensive determination of every action and proceeding" (FRCP 1).

### 4. The Court's Findings Negate Bad Faith Concerns

The district court's findings comprehensively negate any suggestion of bad faith or dilatory motive. The court explicitly determined that Banga's § 123110 claim based on the March 12, 2020's request was both timely and plausibly pled. This finding directly contradicts the magistrate judge's earlier conclusion about bad faith and untimeliness.

Second Circuit precedent in *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993), establishes that "the rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." The court's careful analysis of the limitations period—finding that because Banga filed this action on November 17, 2022, her claim based on the March 2020 request fell well within the three-year statute of limitations—effectively eliminates any concern about delay or bad faith.

Furthermore, the Second Circuit has consistently held that 'mere delay' does not suffice to deny leave to amend. *State Teachers Retirement Board v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir. 1981). Instead, the court must find specific

prejudice to the opposing party, bad faith, or futility. Here, the district court's own findings—particularly its recognition that Banga plausibly pled a timely claim—negate all these potential justifications for denying amendment.

## 5. Newly Discovered Information Justifies Amendment

The proposed amendment would incorporate crucial newly discovered evidence, including the defendant's contradictory statements about medical records across different proceedings. The Second Circuit's decision in *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 55 (2d Cir. 1995), specifically recognizes that leave to amend should be granted to include information unavailable when the complaint was filed.

## 6. Absence of Opportunity to Address Court's Concerns

The district court's failure to provide guidance or amendment opportunity, particularly after finding merit in the claim, has deprived the plaintiff of the chance to address perceived deficiencies. This denial is especially problematic given the court's finding of merit without allowing full articulation of the meritorious argument.

The Supreme Court's mandate in *Foman v. Davis* that leave to amend should be "freely given" carries particular weight when a plaintiff has not had the opportunity to amend based on court guidance. The current denial contradicts both FRCP 15(a)(2)'s spirit and the liberal amendment standard established by higher courts.

///
///

### 7. Specific Improvements in the Proposed Amendment

The proposed amended complaint would implement several substantive

improvements directly responsive to the court's findings:

### a. Clarification of § 123110 Claim Timeline:

- Detailed allegations regarding the March 12, 2020 medical records request
- Explicit identification of Lustig's role in responding to the request
- Clear demonstration that the claim falls within the three-year statute of limitations
- Specific facts showing violation of the 15-day statutory response period

### b. Enhanced Pleading Structure:

- Clear delineation between timely claims (March 2020 request) and time-barred claims
- Specific allegations regarding the medical authorization form submitted
- Detailed description of the ABR Testing records requested from April 6, 2012, and October 7, 2013
- Explicit connection between the records request and Lustig's obligations

### c. Jurisdictional and Procedural Clarity:

- Precise timeline establishing the claim's timeliness under Cal. Civ. Proc. § 338(a)
- Clear articulation of the basis for injunctive relief
- Specific allegations supporting personal jurisdiction over Lustig
- Detailed facts establishing the court's subject matter jurisdiction

### d. Strengthened Legal Framework:

- Clear presentation of §123110's requirements
- Explicit connection between statutory violations and requested relief
- Detailed factual support for each element of the claim
- Clear articulation of the right to injunctive relief

### e. Additional Supporting Elements:

- Documentation of the March 12, 2020 medical authorization form
- Evidence of Lustig's failure to respond within the statutory period
- Clarification of the relationship between various defendants
- Detailed explanation of the requested medical records' significance

As recognized by the Second Circuit in *Loreley Fin.,* 797 F.3d at 190, "Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." Here, the court's ruling provides clear guidance for strengthening the complaint through amendment, particularly regarding the timeliness and plausibility of the March 2020 request.

## VIII. Request for Oral Argument

Appellant respectfully requests oral argument. This appeal presents substantial questions concerning fundamental judicial obligations and procedural rights, including:

- The scope of district courts' de novo review obligations;
- The proper application of res judicata to state law claims;
- The interpretation and enforcement of California Health & Safety Code §123110; and
- The preservation of pro se litigants' access to judicial remedies.

The complex procedural history and interconnected nature of the multiple errors warrant oral presentation to ensure full examination of these issues. Given the

potential precedential impact on judicial review standards and jurisdictional principles, oral argument would materially assist the Court in resolving this appeal.

## IX. CONCLUSION

For the foregoing reasons, the district court's judgment should be reversed. The court's failure to conduct proper de novo review, misapplication of res judicata, improper declination of jurisdiction, and unwarranted denial of leave to amend constitute significant reversible errors that have deprived Appellant of fair adjudication. These errors, both individually and collectively, warrant intervention under 28 U.S.C. §2106. This Court should vacate the judgment and remand with specific instructions to conduct proper de novo review of all objections, maintain jurisdiction over all claims, permit amendment of the §123110 claim, and proceed with adjudication under its original jurisdiction.

Respectfully Submitted,

Dated: October 22, 2024

By: _Kamlesh Banga_

KAMLESH BANGA

APPELLANT/PLAINTIFF IN PRO PER

## CERTIFICATE OF COMPLIANCE PURSUANT TO
## SECOND CIRCUIT RULE 32-4 FOR CASE NUMBER 24-140

I certify that this brief complies with the type-volume limitation of Second

Circuit Local Rule 32.1(a)(4)(A) because, excluding the parts of the document

exempted by Fed. R. App. P. 32(f): This brief contains less than 13650 words. This

brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and (6).

Dated: October 22, 2024

By: _____*Kamlesh Banga*_____
        KAMLESH BANGA

        APPELLANT/PLAINTIFF IN PRO PER

## PROOF OF SERVICE
### BANGA v. LAWRENCE LUSTIG
### UNITED STATE COURT OF APPEALS SECOND CIRCUIT
### APPEAL CASE NO.: 24-140

I certify that the following is true and correct; I am a resident of the Solano County; I am over the age of eighteen years; and not a party to this action; my address is: 755 Britannia Drive Vallejo, CA 94591. On October 22, 2024, I served the following

### APPELLANT'S OPENING BRIEF AND
### APPENDIX VOLUME I &II

by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Solano County, California.

David Todd Shuey, Esq.
**Rankin, Shuey, Mintz, Lampasone, & Harper**
475 Clay Center
475 14th Street, Suite 650
Oakland, CA 94612

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 22, 2024

By _____
Madan Lal